Plaintiff, Pasquale Ranatza, sued for compensation for 400 weeks on the ground that he has been totally permanently disabled to do work of any reasonable character by reason of an injury sustained to his right arm while performing duties as a skilled carpenter in the employ of the defendant. His claim was recognized by the lower court and this appeal has been prosecuted by his employer, Higgins Industries, Inc., from the adverse decision.
Plaintiff's employment and injury from an accident occurring within the course and scope of his duties are conceded by the defendant. It is also admitted that his rate of wages were such as to entitle him to the maximum weekly compensation of $20. Therefore, the sole questions presented for review are (1) the extent of plaintiff's disability and (2) whether or not he is physically able to do work of any reasonable character.
We find the facts of the case to be as follows: Plaintiff was engaged by defendant as a skilled carpenter at its boat building plant and was paid on a 40 hour per week basis at $1.25 per hour with extra compensation for overtime. His earnings averaged between $50 and $75 per week. On April 25, 1942, while working with other employees in the construction of a speed boat, he sustained an injury to his right elbow when he exerted his full strength in an attempt to prevent the hull of the boat from sliding. As a result of the accident, plaintiff's elbow began to pain and swell and he was sent to the plant hospital where he was treated by a doctor in defendant's employ. His arm was placed in a splint for four weeks and, after its removal, he was administered physio-therapy for three weeks, at which time he was discharged as fully cured and directed to return to work. Plaintiff thereafter attempted to perform his duties for a period of three and one-half weeks but was compelled to discontinue because his right elbow had become swollen and was painful. He was then administered further treatment at the plant's hospital; X-rays were taken and a plaster cast was applied to the elbow. After four more weeks, the plaster cast was removed and plaintiff received physio-therapy for several weeks following, when he was again discharged, as fully cured, and ordered to return to work. During the time of this disability, which continued for a period of 19 weeks, plaintiff was paid compensation by defendant. When payments of compensation were discontinued, plaintiff maintained that he was still disabled and consulted other physicians who administered treatment to him.
The medical evidence in the case consists of the testimony of Drs. Simon and Salerno for plaintiff and Drs. Caldwell and Nix for defendant. All of the physicians agree that the injury to plaintiff's elbow, which is described by one of them as a dislocation and by another as a tearing of the ligaments, is permanent and that a bony block was formed during the healing process which has resulted in a limitation of the range of flexion and extension of plaintiff's right arm. Dr. Simon says that this limitation amounts to about 25% and Dr. Caldwell, defendant's expert, is in substantial agreement. Both of these physicians, who are eminent orthopedic surgeons, also agree that operative measures are not advisable and that, therefore, the condition is permanent in its nature.
Plaintiff testifies that he is wholly unable to perform the duties required of a carpenter inasmuch as he cannot use a hammer or a saw; that, when he attempts to *Page 204 
use his right arm, he suffers pain and that the elbow becomes swollen and inflamed.
Dr. Caldwell, while conceding that there is a permanent injury in that plaintiff does not enjoy normal flexion and extension of his right arm, states that he should be able to perform the duties required of a carpenter although "it would undoubtedly make it a little more awkward". He further proclaims that the use of the arm in carpentry work should not cause the elbow to produce pain or become inflamed.
On the other hand, Dr. Simon is of the opinion that plaintiff cannot again engage in the carpentry trade because, in addition to the limitation of motion in his right arm due to the bony block, there is an inflammatory reaction of the capsule structure of the joint which produces pain as soon as an attempt is made to flex or extend the arm in the manner required by work of that nature. Dr. Simon explains that the pain and inflammation which plaintiff suffers may be described as sub-acute in the sense that it will disappear within a short time after it exhibits itself, if the arm is given rest, but that, as soon as the arm is used in the strenuous employment of a carpenter, the condition will immediately recur.
A consideration of all of the testimony in the case has convinced us that the injury to plaintiff's arm is not only permanent but that he can never again successfully perform the duties required of a carpenter. This was evidently the view of the district judge and we think that his conclusion was correct on this question of fact.
However, counsel for defendant maintain that the mere fact that plaintiff is unable to perform the same work that he was doing prior to the accident does not entitle him to recover compensation for 400 weeks and that, since plaintiff is now successfully performing the duties of a bus driver in the employ of another company, he cannot be said to be totally permanently disabled to do work of any reasonable character.
The evidence shows that, on or about October 7, 1942 (a little more than six months after the accident), plaintiff entered the employ of the Louisiana Transit Company at a salary of $110 per month; that his duties consist of driving a bus for five hours each day and that he is also required to do other work in his employer's garage such as the changing of oil, greasing, cleaning spark plugs and making minor repairs to the buses. In April 1943, plaintiff's salary was increased to $135 per month and he has received bonuses, in addition to his salary, amounting to $235. Plaintiff apparently performs this work satisfactorily although he testifies that, at times, he is compelled to "lay off" because his arm pains him and becomes inflamed. He is corroborated in this statement by Mr. James C. Meibaum, superintendent of Louisiana Transit Company, who states that, whenever plaintiff exerts pressure on the injured elbow, it becomes swollen and that he is compelled to stop work.
The question, therefore, is whether the present employment in which plaintiff is engaged is work of such a character as to authorize a holding that he is not entitled to the compensation payable under paragraph (b) of subsection (1) of section 8 of the Employer's Liability Act, Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 357. That paragraph provides: "For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks."
The paragraph has been many times interpreted by our appellate courts and the holdings, in practically all of the cases, are unanimous to the effect that, by giving the provision the liberal interpretation to which it is entitled, the words "work of any reasonable character" mean work of the same or similar nature. See McQueen v. Union Indemnity Co., 18 La.App. 612, 136 So. 761; Custer v. N.O. Paper Box Factory, La.App., 170 So. 388; Sumrall v. E.I. Du Pont de Nemours Co., La.App., 1 So.2d 430; Anderson v. May, La.App., 195 So. 783; Hibbard v. Blane, La.App., 183 So. 39; Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6 and other cases too numerous to mention.
In considering the provision in question the Supreme Court, in Knispel v. Gulf States Utilities Co., supra, [174 La. 401, 141 So. 12] observed: "The disability should, we think, be deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similardescription that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer's service, has been taken from him, and he is in the world without an occupation. In his *Page 205 
position he is wholly incapacitated, and what little he may learn or be able to do thereafter will likely be done under greater difficulties, placing him at a disadvantage even in securing what work he may be able to perform. Cf. Bradbury's Workmen's Compensation, p. 235, § 2." (Italics ours.)
By applying the above-stated view of the Supreme Court to the facts of the case at bar, we entertain no difficulty whatever in arriving at the conclusion that plaintiff is entitled to the compensation payable for total permanent disability. Plaintiff was a skilled carpenter and followed that trade for more than 12 years prior to the accident. As a result of his injury, he can no longer engage in the pursuit for which he was best fitted by choice, training and experience. The fact that he has been successful in obtaining work as a bus driver at a fair salary and has performed the duties required of him in a satisfactory manner does not operate to deprive him of the compensation payable for total permanent disability since the occupation of driving a bus cannot be fairly considered to be of the same or of a similar nature to carpentry work. The latter is a trade which requires skill, experience and training, in addition to a considerable amount of manual effort. Conversely, the driving of a bus requires only ordinary intelligence and not nearly the manual effort. In fact, the ability to operate a motor vehicle, in this era, is possessed by most persons — whatever be their status, training and experience in other lines of endeavor.
It is apt to observe that the views which we now entertain may be said to be somewhat in conflict with those expressed by us in the case of Riviere v. McClintic-Marshall Corporation, 177 So. 99. In that matter, plaintiff, while employed as a "bridgeman", received an injury which resulted in a 50% disability to his leg. The evidence showed that the effect of the accident was such that plaintiff could no longer do the work required of a "bridgeman" but the record was silent as to what type work he could perform in his disabled condition. Compensation for 400 weeks was awarded to plaintiff by the trial judge. On appeal, the decision was reversed and the case remanded for the submission of additional evidence. There, we expressed the view that the test to be used, in determining the totality and permanence of the disability, was whether the employee was able to perform the kind of work for which he was fitted by status, training and education and not whether he was able to engage in the identical employment which he had been performing before the disabling accident. We further express the conviction that, if the plaintiff could be employed in some clerical capacity which did not require much laborious exertion, he would not be entitled to the compensation payable for total permanent disability. When an application for a rehearing was applied for, plaintiff directed our attention to the pendency in the Supreme Court of the case of Stieffel v. Valentine Sugars, Inc., supra, where a similar question had been presented for consideration. Upon being thus advised, we deferred action on plaintiff's application. Thereafter, when the Supreme Court reversed the decision of the Court of Appeal for the First Circuit in the Stieffel case and reinstated the judgment of the trial court in that matter, we granted plaintiff's application for a rehearing in the Riviere case as we felt that the conclusions reached in our original decree were in conflict with the views of the Supreme Court. However, the Riviere case was never submitted on rehearing due to its dismissal on joint motion of the litigants.
The decision of the Supreme Court in the Stieffel case controls the result in this matter. There, a stenographer sustained an injury to his hip which resulted in the shortening of his right leg. The facts of the case revealed that his disability did not prevent him from performing ordinary stenographic work but that he could not work for long hours without enduring pain; that his ability to move about the office was impaired and that he was unable to do certain other chores which were expected of him by his employer. The district judge held that plaintiff's disability was total and permanent but the Court of Appeal reduced and amended the judgment by allowing him compensation for 100 weeks (sec 175 So. 425). In the Supreme Court [188 La. 1091,179 So. 15] the judgment of the district judge was reinstated as the court was of the opinion that an employee is totally permanently disabled when he is unable "to perform substantial and material part of his occupation in the usual and customary way." On page 1115 of the decision in 188 La., on page 14 of 179 So., the court, in quoting the opinion of the district judge with approval, observes: "`When an injured employee is unable to do work of the same description that he was employed to do when injured, his injury, *Page 206 
in contemplation of law, is equal to total disability.'"
Counsel for defendant have cited a number of cases in support of their contention that plaintiff is not permanently totally disabled to perform work of a reasonable character. Those cases are Heard v. Receivers of Parker Gravel Co., La.App., 194 So. 142; Spillers v. Jonesboro Gin Co., La.App., 193 So. 509; McCain v. Fohs Oil Co., La.App., 6 So.2d 197 and Haynes v. Silas Mason Co., La.App., 16 So.2d 137.
The decision in the McCain case does not support counsels' contention as it was held that an employee who had lost an eye and who was prevented, by reason thereof, from performing his customary work, without danger, was totally permanently disabled.
In the Spillers case, the evidence showed that the employee, who had lost three fingers in an accident, was able to successfully perform the work required of him by his employer and that he experienced no reduction in his wages. The court concluded that, under these circumstances, he was not to be regarded as being totally permanently disabled. Obviously, the result reached there was correct.
The decisions in the Heard and Haynes cases are not so easily disposed of. In the Heard case, the employee, an uneducated manual laborer, sustained an injury to his left hand which resulted in the amputation of the first, second and third fingers at the first joints, close to the palm, and a stiffness of the little finger. The testimony disclosed that the employee was unable to perform industrial labor but that he was familiar with farming and was able to do many, if not most, of the duties required by that occupation. Under this state of facts, the Court of Appeal for the Second Circuit held that plaintiff was not totally permanently disabled but that he was entitled to recover compensation for the loss of a hand. The opinion of the court is predicated on the premise that, since the employee could perform most of the duties required of a farmer (although he could not engage in manual industrial labor), it would be incorrect to say that he was wholly disabled from doing work of any reasonable character.
Unless the particular facts of the Heard case can be viewed as providing a sufficient cause to distinguish it from the decision in the Stieffel case, it is manifest that the conclusion reached in that matter is in conflict with the opinion of the Supreme Court. But whether a logical distinction can be deemed or not is of no importance to the conclusion in the case at bar, as it is our opinion that the facts presented here authorize the resolution that, since plaintiff is unable to perform the duties of the carpentry trade (which was the only occupation pursued by him prior to the accident) he is permanently totally disabled from doing work of a reasonable character within the contemplation of the compensation act as interpreted by the Supreme Court in the Knispel and Stieffel cases.
In the recent case of Haynes v. Silas Mason Co., supra, it was shown that, prior to the accident, plaintiff had worked as a carpenter and as a blacksmith, which were his principal occupations, and that he had owned and operated a farm for some years. As a result of an accident which befell him while working as a blacksmith, he sustained an injury which prevented him from following the trade of carpenter or of blacksmith with complete effectiveness. Notwithstanding this, the court held that he was not permanently totally disabled, as he could perform the work required of a farmer without difficulty, and that his compensation should be limited to a period of 200 weeks, which is the compensation payable for the loss of an arm.
The same observations which we have made with respect to the case of Heard v. Receivers, supra, apply with equal force to the decision in the Haynes matter. That decision must be regarded as being in conflict with the view of the Supreme Court in the Stieffel case unless it can be distinguished on the ground that the injury, while rendering the plaintiff incapable of pursuing his two principal occupations, carpentry and blacksmithing, was nevertheless not totally disabling because he was able to engage in his other occupation, i.e., the operation of a farm. It may be that the Supreme Court was of the opinion that a distinction existed for it appears that it denied a writ of review in the Haynes matter on January 3, 1944. But whether that was the reason for the refusal of the writ is of no importance in this case forasmuch as, here, plaintiff's sole occupation, prior to the accident, was carpentry and, as a result of his injury, he can no longer engage in that calling. The mere fact that he has undertaken, and is performing, the work of a bus driver does not, in our conception of the views of the Supreme Court, deprive him *Page 207 
of the compensation payable for total permanent disability.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.