Harold J. Henry, while engaged in his work for Higgins Industries, Inc., on March 2, 1944, was struck on the right foot by a falling beam and certain bones of that foot were broken. He brought this suit for compensation against the said employer, Higgins Industries, Inc., and its insurer, Maryland Casualty Company, and alleging that he had been permanently and totally disabled and that his daily rate of pay was such as to entitle him to compensation at the maximum rate, $20 per week, prayed for solidary judgment against the two named corporations for $20 per week for 400 weeks, together with interest on all overdue payments, subject to a credit for such amounts as had already been paid to him.
Defendants admitted the employment and the occurrence of the accident, and admitted also that for a certain period plaintiff had been totally disabled, but they averred that for that period they had paid him compensation and that they had also paid all hospital and medical bills. For lack of sufficient information, they denied that plaintiff's disability had continued beyond the period during which they had paid him compensation but they now concede that he is partially, permanently disabled and assert that he is entitled to be paid compensation for the balance of 300 weeks, based on a one-third disability of one foot. In other words, their contention is that plaintiff's disability is limited to one foot and that that disability amounts to only one-third of the total use of the foot, and that since, for the total loss of the foot he would have been entitled to compensation for only 125 weeks, he is entitled to be paid one-third of $20 per week for 125 weeks.
In the District Court there was judgment for plaintiff against both defendants for $20 per week for 400 weeks together with 5% interest on all overdue payments, subject to a credit of $246.67, the amount already paid. Defendants have appealed and plaintiff has answered the appeal praying that he be awarded an additional 10% as damages for the taking of a frivolous appeal.
The record shows that the accident occurred on March 2, 1944 and that he was admittedly totally disabled until May 24, 1944. On that day he was discharged by a physician of Higgins Industries as able to return to work. He was offered a position by his former employer which consisted of lighter work but because he was unwilling or unable to pay the necessary union dues, he did not accept that employment. He secured work at Dixie Machine Shops but says that within the three weeks he was employed there he was able to work only about half the time because of the condition of his foot. He then attempted to drive a truck for several weeks but says that he could not do so. His family lived in Thibodaux, so he went to live there, and secured a position driving for a funeral home, but states that he could not do that work for more than about two weeks as his foot continued to give him trouble.
At the time of the injury, he was employed as a ship-fitter's helper but defendants maintain that since he had been employed only from February 14th to March 2nd he had not become an expert in any particular work, and that it could not be said that he had developed a trade or had become a specialist in any particular kind of work. In other words, defendants maintain that he was an ordinary common laborer and that, therefore, the injury to his foot did not deprive him of his ability to exercise any particular trade or specialty, and they assert therefore that he is not entitled to compensation for total permanent disability but only for partial disability since he is able to do work of a reasonable character, and that he should be paid compensation under subparagraph (c) of subsection 1 of Section 8 of Act 20 of 1914, as amended by Act No. 242 of 1928, which subparagraph reads as follows: "(c) For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."
Defendants point also to paragraph 15 of subparagraph (d) of the same section, which provides as follows: "15. In all cases involving a permanent partial loss of the use of function of the member mentioned hereinabove, compensation shall bear such proportion to the amounts named herein *Page 404 
for the total loss of such member as the disability to such member bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."
Plaintiff, on the other hand, maintains that he has been deprived of his ability to work in the special trade in which he was working at the time of the injury, and that under the jurisprudence of this state he is entitled to have his disability classified as total and permanent, and he asserts, in the alternative, that, if he could not be considered as as expert in any particular trade, then he is a common laborer, and that since he cannot use his foot to the extent to which he could use it prior to the accident, and to the extent to which it must be used in performing common labor, he is deprived of his ability to obtain employment as a common laborer and is, therefore, entitled to have his disability graded as total and permanent, and that therefore, in either of the alternatives, he is entitled to compensation at the rate of $20 per week for 400 weeks.
That plaintiff is unable to use his foot to the extent to which he could use it before the accident there can be no doubt at all. Dr. Maurer who testified on his behalf described the condition of his foot as follows: "This man sustained an acute traumatic crush injury to the right foot, resulting in marked involvement of skin and tendon and fascia plane. The X-ray showed anatomical disturbances such as a dislocation of the metatarsal bone on the cunieform bone, proliferation of periosteum. The anatomical disturbances plus the periosteal pathology will cause localized pain under the base of the big toe."
Dr. Maurer also stated: "This will cause lack of flexibility of the foot, and with the existence of pain, muscles will tire and fatigue quickly and go into spasm, preventing this man from engaging in an occupation that requires standing and walking."
He said further that no operation or further surgical attention could improve the condition of the foot; "This is a permanent damage and he has reached his end result." He further stated: "He could not only not carry objects but he could not walk around for any length of time without pain * * *"
Dr. Simon, who testified on behalf of defendants, was of the opinion that the disability amounted to only about one-third of the use of that foot and that the plaintiff could engage in many different kinds of work, but conceded that there were many heavy labors which the plaintiff would find it impossible to perform. When told that plaintiff had, in the past, been in the habit of carrying weights amounting to 100 to 150 pounds, and when asked whether he could do that and "walk normally without any pain or discomfort" he said: "That may give some discomfort." He discussed the fact that he had recommended that the plaintiff's shoes be sent to a shoemaker in order that they might be built up in a certain way, and when stating that by the use of those shoes plaintiff would be much relieved, he said, with even greater frankness, that plaintiff would be benefited to the extent that he could do things "other than hard labor."
[1] We think it very obvious that the plaintiff, even if it be conceded that he had not developed any expertness in any specialty or trade and was therefore only a common laborer, could no longer compete with other able-bodied laborers in the securing of employment. Therefore we need not discuss the question of whether this case should be put in the category of Butzman v. Delta Shipbuilding Co., La. App., 21 So.2d 80 or Ranatza v. Higgins Industries, Inc., La. App., 18 So.2d 202, but all that we need find is that plaintiff was a common laborer and can no longer engage in the kind of labor in which he had earned his living prior to the occurrence of this accident, and of this we have no doubt.
Because of the daily rate of pay of plaintiff at the time of the accident, he is entitled to the weekly maximum permitted under Act 20 of 1914, as amended.
[2] When we come to consider plaintiff's answer to the appeal and his request for damages for the taking of a frivolous appeal, we cannot agree with him that these damages should be allowed. Certainly there was nothing frivolous about the seriousness with which counsel for defendants prepared their brief and argued the case, and we do not see that the record makes out so perfect a case for plaintiff as to require that we characterize this appeal as frivolous.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 405