Plaintiff prosecutes this appeal from a judgment of the District Court rejecting his demand for payment of further compensation for the loss of his right hand. On November 26, 1942, and prior thereto, plaintiff was employed by the defendant, Independent Ice and Cold Storage Company, as a helper on an ice delivery truck at a weekly wage of $10.50, working seven days per week. In connection with this work, he also assisted in the operation of an ice crushing machine, attached to the ice delivery truck. On November 26th, an ice pick accidentally dropped into the crushing machine, and plaintiff reached into the ice crushing machine with his right hand to remove the ice pick. A fellow worker started the ice machine. Before he could remove his hand, it was so badly injured that it was necessary to amputate the hand just above the wrist. He alleges that as a result of the loss of his right hand that he is unable to do the work of a common laborer which he alleges is the only kind of work he is qualified to do. He alleges that the Liberty Mutual Insurance Co. of Boston, Mass., has issued a policy to the other defendant insuring it against loss caused by injury to any of its employees, and especially the injury suffered by plaintiff. He prays for judgment for total and permanent disability to do work of a reasonable character for the period of his disability, not exceeding 400 weeks, at the rate of $6.82 per week, subject to a credit of 150 weeks compensation paid at the rate of $6.82 per week.
[1] This demand was met first with a plea of prematurity, in which the defendants set up that the suit was filed October 5, 1945, and that from plaintiff's petition, it appears that he has been paid compensation for a period of 150 weeks, which would represent compensation through October 11, 1945, and accordingly at the time the suit was filed, the employer had neither failed nor refused to pay any compensation due plaintiff to that date. This plea of prematurity was overruled by the District Judge. On the trial of the case the plaintiff testified that when the insurance company gave him the last check completing the payment for 150 weeks, he was told by the adjuster that no more payments would be made to him on account of the loss of his hand. This being so, the plea of prematurity was correctly overruled.
The defendants then answered the suit admitting the payment of compensation for 150 weeks at $6.82 per week, but denied the other substantial allegations of the petition and denied that plaintiff's weekly wage was $10.50, alleging that it was $7. However, in view of the fact that compensation had been paid at the rate of $6.82, which is 65 per cent of $10.50, this allegation has little force.
There is very little dispute as to the facts in this case and no dispute that plaintiff lost his right hand above the wrist. Plaintiff *Page 798 
testified that after his injury and recovery he went back to the defendant ice company and was given employment for some two weeks in the cold storage room and that he got sick and stopped work, and when he went back, he was discharged. The defendant filed a motion to reopen the case for the purpose of showing that he was not discharged, but left of his own free will. The case was reopened to admit testimony in support of the allegations of the motion to reopen and defendant called Mr. E.L. Fortson, an employee. Mr. Fortson, in answer to a question as to whether plaintiff stopped work of his own free will, answered: "That was my understanding". He also said that the boy was not fired, that he knew of. Mr. Fortson also said that Mr. E.J. Williams was the manager of the company at that time and that he is the only person who would know whether or not the boy was discharged or quit of his own accord. Mr. Williams at that time was in Denton, Texas.
Defendants also sought to show for the purpose of discrediting his testimony, that plaintiff had been employed by the ice company only a short time, instead of the two years he alleged. However, the record discloses that one Tom Lewis was an independent ice dealer, buying ice from the company and selling it, and that the boy worked for him for some time, believing that he was employed by the defendant ice company. All of these matters have no particular significance as the record is clear that at the time of his injury he was employed by the defendant ice company at a weekly wage of $10.50, and that he suffered the injury and loss of his hand while in the course and scope of his employment. The question in this case is whether or not the plaintiff is entitled to an award of compensation during the period of disability not to exceed 400 weeks or whether he is entitled to compensation under the provisions of Act No. 20 of 1914, as amended by Act No. 242 of 1928, pp. 357, 358, Section 8, subd. 1(d), Dart's Stat. § 4398, which provides:
"That compensation shall be paid under this Act in accordance with the following schedule of payments:
* * * * * *
"(d) In the following cases the compensation shall be paid as follows:
* * * * * *
"5. For the loss of a hand, sixty-five per centum of wages during one hundred fifty weeks.
* * * * * *
"13. Amputation between the elbow and the wrist shall be considered as equivalent to the loss of a hand * * *".
Plaintiff cites and relies principally on the case of Henry v. Higgins Industries, Inc., La. App. Orleans, 24 So.2d 402, 404, which contains the following statement: "We think it very obvious that the plaintiff, even if it be conceded that he had not developed any expertness in any specialty or trade and was therefore only a common laborer, could no longer compete with other able-bodied laborers in the securing of employment. Therefore we need not discuss the question of whether this case should be put in the category of Butzman v. Delta Shipbuilding Co., La. App., 21 So.2d 80, or Kanatza v. Higgins Industries, Inc., La. App., 18 So.2d 202, but all that we need find is that plaintiff was a common laborer and can no longer engage in the kind of labor in which he had earned his living prior to the occurrence of this accident, and of this we have no doubt."
Prior to the decision in the Henry case, it had been held in the two cases cited above, and in other cases, by the Orleans Court of Appeal, that where an employee is trained in some particular line of work and is a skilled workman in that line, he is entitled to recover as for total and permanent disability even though he be able to do other work and 'at better pay. In the case of Custer v. New Orleans Paper Box Factory, Inc., et al., La. App., Orleans, 170 So. 388, a common laborer who had lost his right arm above the elbow was found to be totally and permanently disabled, and was awarded compensation accordingly.
In the Henry case the record shows that he sustained a foot injury in which some bones of the foot were fractured and that at the time of the trial, he still suffered pain when standing on the injured foot and the court decided that for this reason, among others, he would be unable to compete *Page 799 
with other common laborers in securing employment. In the present case, it is not shown that the plaintiff suffers any pain on account of the loss of the hand and clearly he should be able to do a number of things classed as common labor. He might still perform the same kind of work he was doing at the time he was injured, though it would be more difficult for him.
[2] The preponderance of the evidence is against the contention of plaintiff that he is unable to do work of a reasonable character, similar to the work he was doing when injured.
For these reasons the judgment of the lower court is affirmed at the cost of the appellant in both courts.