This is a suit under the compensation law. The plaintiff, Myrtle R. Jacobson, wife of L.M. Nichols, was injured on February 8, 1943, while employed as a welder by Higgins Industries, Inc., when she fell about four feet off the end of a ramp, landing on the concrete floor on her buttocks.
The Maryland Casualty Company, the insurance carrier of Higgins Industries, Inc., paid plaintiff compensation at the rate of $20 per week for a period of 50 weeks or from February 8, 1943, through January 24, 1944, when it ceased payment on the ground that she had entirely recovered. It also paid $389.44 for hospital and medical expenses incurred by the plaintiff.
Plaintiff, claiming that she was and is totally disabled as a result of the accident, brought this suit on September 15, 1944, against Higgins Industries, Inc., and Maryland Casualty Company, alleging that she is permanently disabled as a result of her fall which caused a dislocation of her coccyx, which is the terminal bone of the spine.
The defendants answered admitting the accident, but denying that plaintiff was entitled to any compensation beyond January 24, 1944.
There was judgment below for a maximum of 400 weeks compensation at the rate of $20 per week, beginning February 8, 1943, and subject to a credit of $1,000. A fee of $25 in favor of Dr. H. Mattes was taxed as costs. Defendants have appealed.
Defendants, in brief and in argument, strenuously contend that the plaintiff was not permanently disabled at the time of the accident and has not been disabled at all since January 24, 1944. In the alternative, should it be found that she was and is disabled, it is claimed that her difficulty is entirely due to her refusal to submit to an operation for the removal of her coccyx.
When plaintiff was injured she was given first aid treatment and removed to Hotel Dieu, where she remained three weeks under the treatment of Dr. James T. Nix, her employer's physician. She complained of pain in the region of her coccyx, but since Dr. Nix could not account for it, he caused her to be examined by Dr. Curtis H. Tyrone, a specialist in gynecology and obstetrics. Dr. Tyrone, with whom Dr. Nix *Page 888 
agreed, attributed plaintiff's pain to disease of her sexual organs and not her coccyx. Dr. Nix then operated on plaintiff for the relief of this condition, however, the operation did not succeed in relieving plaintiff of her pain.
Dr. Tyrone testified for defendant to the effect that he found a number of things wrong with plaintiff's sexual organs, but nothing involving her coccyx. He first believed her trouble was caused by "endometriosis" which he described as "the occurrence of blood within a cyst of the ovary due to hemorrhage or due to misplaced endometrial cells". He subsequently declared the plaintiff's condition was due to "hydrosalpingitis" and not "endometriosis", and that the former is due to infection from venereal disease, abortion; postportal infection or hemorrhage. Dr. Tyrone emphatically denied that Mrs. Nichols' trouble was due to or aggravated by the accident.
Dr. Theodore H. Simon, who examined plaintiff on behalf of defendant, caused an X-ray to be made of Mrs. Nichols by Drs. Fortier and Gately. The resultant radiograph, according to Dr. Simon, revealed that her coccyx "was excellent". There was no fracture and no dislocation of the "coccygeal or sacral segments". He described her condition as "coccydynia", which he explained is a "term used when there is a symptomatic complaint of discomfort with no clinical findings".
Dr. H. Mattes examined Mrs. Nichols on February 14, 1944, and again on June 17, 1946. He testified on behalf of plaintiff to the effect that the fall which she sustained could have caused the condition in her pelvic region. He was also of the opinion that she suffered severe pain from her coccyx which was dislocated.
Dr. J.M. Gorton testifying for defendant said that while Mrs., Nichols' coccyx was normal, she suffered a good deal of pain upon manipulation.
Dr. Harry W. Paul, for plaintiff, was of the opinion that Mrs. Nichols had a dislocated coccyx which "in all probability will cause pain and backache as long as the coccyx remains there".
[1] Defendants' counsel make much of the fact that Mrs. Nichols and her husband undertook the management of a small farm near Picayune, Mississippi, and while there she helped her husband in varions chores, and the further fact that after her accident she moved to a small town near Shreveport, Louisiana, where she was occasionally employed in driving a bus. They argue that her activities in this respect are inconsistent with the idea of total disability. It has been held on numerous occasions that the test of disability is whether the employee can discharge the duties of the occupation he or she occupied at the time of the injury. Butzman v. Delta Shipbuilding Co., Inc., La. App., 21 So.2d 80; Ranatza v. Higgins Industries, Inc., La. App., 18 So.2d 202; McKenzie v. Standard Motor Car Co., La. App., 15 So.2d 115; Stieffel v. Valentine Sugars Co.,189 La. 1091, 179 So. 6. Mrs. Nichols was a welder when injured. The testimony of the medical experts, almost without exception, is that she is unable to work as a welder.
[2] We conclude that Mrs. Nichols is entitled to compensation for total disability unless the fact that she has refused to submit to an operation for the removal of her coccyx suspends her right of recovery.
The medical testimony as to the character of this operation is almost unanimous and is to the effect that it is a simple operation unattended by danger to life. It is for the most part likened to an appendectomy.
In Simmons v. Blair, 194 La. 672, 194 So. 585, 587, our Supreme Court said: "If we were to consider that the tendered operation was to be regarded in the nature, as to the seriousness thereof, of a tonsillectomy, an appendectomy or an abdominal operation for the removal of a tumor, it certainly could not in the light of the jurisprudence of this State be considered such an operation that the employee's refusal to undergo it would be unreasonable or arbitrary."
It will be remembered that Mrs. Nichols had had one operation. It is true that counsel contend that some of the medical testimony is to the effect that this operation had nothing to do with her injury, but we are not sure that this is true, because other medical experts testified that her condition in the pelvic region might have been aggravated or accentuated by her fall. *Page 889 
Moreover, why would the physician of defendant, Higgins Industries, Inc., advise and perform the operation if it had no connection with the accident. However, the operation was not successful. Plaintiff continues to suffer pain in the region of her pelvis, though she complains particularly of her coccyx, and while she has definitely refused to submit to the removal of her coccyx on the ground that she is afraid and will not do so as long as she can bear the pain, she seems to be justified in her refusal. We are not prepared to say what sort of operation might be unreasonable to refuse in view of the jurisprudence on the subject, but here, while practically all of the medical experts agree that the operation is a simple one, Dr. Gorton, defendant's physician, is of the opinion that: "She could have the coccyx removed and this would probably cure the pain in this region, but this is not a simple operation and should be done only by a bone surgeon or by a surgeon who has had some experience in doing this kind of work."
Dr. Gorton further said: "The difficult part is, I don't know whether it is so difficult but in making the incision, unless you know your anatomy and handle it, and operate properly, is the damage to the soft tissue around, particularly the nerve filaments will result in a painful condition even after the operation."
[3] Under the circumstances we do not believe her refusal to submit to another operation at this time unreasonable.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.