Plaintiff instituted this suit against the H. H. Machine Shop, a partnership, and its insurer, the Century Indemnity Company of Hartford, Connecticut, for compensation under the total permanent disability clause of the Workmen's Compensation Act, Act No. 20 of 1914, as amended, subject to payments received for a period of thirty weeks at $20 per week, the maximum amount per week allowed, for the loss of the right index finger caused by accident occurring on May 24, 1945.
Plaintiff was employed by H. H. Machine Shop, as the operator of an air hammer and on May 24, 1945, at about 7:30 A. M., while in the course and scope of his *Page 116 
said employment engaged in the chipping of excess welding and air bubbles on iron and similar sheet metal on a sea barge, the barge was lifted, and upon being let down, through some unexplained reason, it fell on plaintiff's right index finger. As a result of the accident the finger was severely crushed, and thereafter plaintiff received emergency treatment under a general anaesthetic, by Dr. J.W. Watson. A metal splint and traction was applied to the finger and subsequently the finger healed, but became stiff because of restricted motion of the phalangeal joints.
It is shown by the evidence that thereafter, on July 2, 1945, plaintiff consulted Dr. J.R. Godfrey with reference to his stiff finger, and told Dr. Godfrey that he desired to have the finger removed because it interfered with his work as operator of an air hammer. Dr. Godfrey testified that the request of plaintiff appeared logical to him and that after consulting with a representative of the defendant insurance company, and securing permission to perform the operation, he removed the finger on August 8, 1945, by disarticulating it at the metacarpophalangeal joint, and that by October 6, 1945, both he and the plaintiff were satisfied with the healing of the amputation, and he therefore discharged him as fit to return to work as an air hammer operator.
It is established by the evidence that all of plaintiffs medical expenses have been paid and that the plaintiff has been paid compensation at the maximum rate of $20 per week for 30 weeks as provided by the Act, Section 4398, Paragraph 1(d) 2 of Dart's Statutes, Act No. 242 of 1928, § 8, subd. 1(d) 2, p. 357, "for the loss of * * * index finger."
The contention of plaintiff is that regardless of the fact that he has been paid the full compensation for the loss of his right index finger, he is still entitled to compensation for 370 additional weeks for the reason that he is totally and permanently disabled from performing the duties of an air hammer operator and that consequently his claim is not limited by Paragraph 1(d) 2, Dart's Statutes, but by Paragraphs (a), (b), (c) of said section of the Compensation Act.
The defendants contend that the plaintiff is not disabled from performing his usual duties as an air hammer operator and that consequently he has received all the compensation to which he is entitled for the loss of an index finger.
After trial of the case, the lower court came to the conclusion that "The preponderance of both the medical and lay testimony is to the effect that notwithstanding removing of plaintiff's index finger, which he requested, he could, if he would, be able to do successfully exactly what he did before the accident and subsequent removal of his finger." In view of that conclusion, the trial judge naturally rendered judgment in favor of defendants and dismissed the plaintiff's suit. Plaintiff has appealed.
The testimony in this case, as pointed out by the trial judge, preponderates to the effect that the removal of plaintiffs finger has not in any way created a disability which should prevent him from resuming his former work as an operator of an air hammer.
It is true that plaintiff himself complains that the end of the stub of his amputated finger is sensitive and that he does not believe that he could operate an air hammer because of that fact and because of the further fact that his grip is not what it was before the accident and operation. However, he admits that he has made no attempt to ascertain whether or not he could again operate an air hammer. In other words, as far as he is concerned, it is a matter of belief.
One of his medical witnesses, Dr. L.J. Kern, corroborates his testimony as to the sensitive stub of the amputated finger to some extent, but that testimony is based on what the plaintiff told him and on what could possibly be true, and on these symptoms, almost entirely subjective, he states that plaintiff has a possible neuroma, and that pressure on the site of the operation could cause pain. Dr. Kern estimates the loss of use of the right hand at 20% based on the fact that he has only three fingers and a thumb left, and states that because *Page 117 
of this disability he has a 20% loss of grip in his right hand.
The other medical witness for plaintiff, Dr. Charles H. Voss, came to the conclusion that plaintiff has a 25% loss of the use of his right hand and also testified that there was a tenderness of the stump of the amputated finger, and that in his opinion he could not operate an air hammer as efficiently as he did before the accident or for a full 8-hour day.
On the other hand, Dr. J.R. Godfrey, who performed the operation, testified that the operation was entirely successful and that in his opinion there should be no pain in the stump and that, moreover, considering the nature of the work of operating an air hammer, the loss of this finger does not disable the plaintiff from performing that work. Dr. J.W. Watson, the first physician whom plaintiff consulted after the accident, testified to the same effect as Dr. Godfrey.
As far as the lay testimony is concerned, we have the testimony of Mr. M.W. Harp, an expert operator of air hammers. He testified that he met with an accident which disabled the second and third fingers of his right hand and that this disability in no way interfered with his operation of air hammers; that in the operation of an air hammer you use mainly the palm of your right hand, the thumb of your right hand and your left hand; that consequently the plaintiff herein would in no way be bothered by the loss of his right index finger in the operation of air hammers.
Another experienced operator of air hammers, V.E. Burns, testified very much to the same effect as Mr. Harp. He states that he suffered an injury to his right index finger which rendered his index finger useless; that in spite of that injury he has successfully operated air hammers, and that the index finger has very little, if anything, to do with such operation; that in chipping there is but little vibration in the right hand in that the chisel and the gun are held in position more with the left than with the right hand.
The trial judge, in his reason for judgment, states that he was particularly impressed by the testimony of Messrs. Harp and Burns who expressed the opinion that the absence of plaintiff's index finger, which is not used in the operation, would not interfere with the operation of an air hammer by plaintiff. We are likewise impressed by the testimony of these witnesses and also by the testimony of Dr. Godfrey who testified that he was acquainted with the operation of an air hammer, and who likewise stated that the absence of the index finger would not, in any way, interfere with plaintiff's operation of the air hammer.
The plaintiff complains, in brief and in oral argument, that the trial judge laid too much stress on defendant's evidence and too little, if not disregarding it altogether, on plaintiff's evidence, particularly the testimony of Drs. Kern and Voss, and of plaintiff himself. We cannot agree with him. In so far as Dr. Kern's testimony relative to the ability of plaintiff to operate the hammer, his opinion is based altogether on a false premise. He states that he based his opinion on the fact that plaintiff "claimed pain when trying to use the hammer." The admitted fact is that plaintiff never attempted to use the hammer after the amputation of his index finger. This Doctor also indulged in a diagnosis of a possible neuroma merely on what plaintiff told him. Neither of these doctors had had experience with the operation of an air hammer. Their testimony is only to the effect that plaintiff had sustained a certain percentage of the loss of use of his hand. As to plaintiff's testimony, it does not impress us. He was contradicted in many particulars. He claims that he could not operate the hammer without the use of the finger, yet he admits that he never tried to so do after the amputation. He did not seek to return to work. Suffice it to say that we do not lay any stress on his testimony. He is refuted by all the lay witnesses who testified relating to the use of the hammer.
[1] We are not unmindful of the well settled jurisprudence of the Supreme Court "that where an employee loses the use of a member of his body or where he loses the member itself by amputation and such loss produces incapacity to do work, such injury *Page 118 
is controlled by paragraphs (a, b, or c) of subsection 1, Section 8 of the Workmen's Compensation Act and not by paragraph (d) of that section, which applies regardless of capacity to work and irrespective of the duration of the disability." See Washington v. Independent Ice Cold Storage Co., 211 La. 690, 30 So.2d 758, 759, and the many cases therein cited. Under the facts in this case, plaintiff could, if he would, return to his former occupation and work, that is, an air hammer operator, notwithstanding the loss of use of his hand to a certain degree. The preponderance of the evidence shows that the palm of the hand is used against the handle of the hammer, and the right thumb to operate the gun, and the left hand to steady the hammer and chisel, the grip being more in the left hand, and the left hand receiving the most of the vibrations.
[2, 3] The test of disability under the compensation law is whether an employee can discharge the duties of the occupation he held at time of injury. See Butzman v. Delta Shipbuilding Co., Inc., La. App., 21 So.2d 80; Ranatza v. Higgins Industries, Inc., La. App., 18 So.2d 202; McKenzie v. Standard Motor Car Co., La. App., 15 So.2d 115; Stieffel v. Valentine Sugars Co., 189 La. 1091, 179 So. 6; Jacobson v. Maryland Cas. Co., La. App., 30 So.2d 887. Applying that test to the present case, plaintiff cannot recover.
Finding no error committed by the trial judge, the judgment appealed from stands affirmed. *Page 333