This is a suit under the compensation law in which the plaintiff, Peter M. Butzman, Jr., claims to be totally and permanently disabled as a result of an accident which occurred while he was employed by the defendant, Delta Shipbuilding Company, Inc., on March 15, 1943. He sues his employer and its insurance carrier, the Fidelity Casualty Company of New York for compensation at the rate of $20 per week for four hundred weeks.
It is admitted by the defendants that plaintiff was injured in the course of his employment as a shipfitter and compensation was paid him for nineteen weeks and two days at the rate of $20 per week, or a total of $396.67. Defendants, however, *Page 81 
deny that the plaintiff was permanently or totally disabled and contend that he had completely recovered on July 29, 1943, when they ceased paying him compensation.
There was judgment below in plaintiff's favor and the defendants have appealed. Plaintiff has answered the appeal, asking that the judgment be amended in the respect that it suspends payment of compensation during the period for "which he has received or will continue to receive wages equal to or exceeding the amount of the compensation".
Butzman was injured when a scaffold on which he was standing collapsed causing him to fall and strike his leg on the edge of a tank. He suffered a comminuted fracture of the left leg. After the accident and after his discharge by the defendants' physicians, who declared that he was able to go back to work on July 29, 1943, Butzman resumed his former employment with the Delta Shipbuilding Company and worked for about ninety days when he concluded that he was unable to perform the duties of a shipfitter and asked for and obtained a transfer to the "burning department", where he worked continuously until the time of the trial a year and three months later. Before the accident he earned an average weekly wage of $55.26, whereas after the accident his average weekly wage amounted to $69.70. Butzman was also employed as a janitor in one of the Divisions of the Criminal Court where he earned $90 per month.
It is the contention of plaintiff's counsel that the earning capacity of plaintiff before and after the accident is of no moment because he is now unable to discharge the duties of his former occupation as a shipfitter, which required him to climb ladders, carry weights and perform other strenuous hard work. As a matter of fact, plaintiff had never been a shipfitter before his employment by the defendant shipbuilding company a few days before the accident. He had previously been an ornamental iron worker and a ship painter.
[1] The section of the compensation law relative to total disability reads as follows:
Section 8, par. 1(b). "For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks." Act No. 242 of 1928, p. 357.
This provision has been interpreted to mean work of the same or similar description to that which he was accustomed to perform. Black v. Louisiana Cent. Lumber Company, 161 La. 889,109 So. 538; Knispel v. Gulf States Utilities Co., 174 La. 401,141 So. 9; Yarbrough v. Great American Indemnity Company, La. App., 159 So. 438; Stieffel v. Valentine Sugars Co.,188 La. 1091, 179 So. 6; Ranatza v. Higgins Industries, La. App.,18 So.2d 202, now pending in the Supreme Court on writs of review, and authorities therein cited.
As we have observed, Butzman was not specially fitted to perform the work of a shipfitter. As a matter of fact, he had only worked in that capacity for a very few days when he was injured and were it not for the holding in Stieffel v. Valentine Sugars Company, supra, we would be inclined to say that Butzman was not permanently and totally disabled within the meaning of the compensation law, but we read in the Stieffel case on page 1115 of 188 La., at page 14 of 179 So., an interpretation of the Yarbrough v. Great American Indemnity Company case (supra) as holding:
"When an injured employee is unable to do work of the same description that he was employed to do when injured, his injury, in contemplation of law, is equal to total disability."
[2] We do not understand the Yarbrough case as so holding, but we are mistaken because our Supreme Court has held otherwise and to the effect that when a workman is injured so that he is unable to perform the duties of the position he occupied when injured, he is totally and permanently disabled.
Butzman, though a shipfitter for a very limited length of time, was employed as such when he was injured and we now turn to the testimony to ascertain whether it can be said that he is unable to discharge the duties of that position. Butzman himself says that while he was trying to accustom himself to the work after his injury during the ninety days that he esumed his position as shipfitter, he found that the pain in his leg was so intense that he could not bear it.
Three doctors testified in the case — Drs. George Battalora and Joseph T. Scott, Jr., for the defendant and Dr. Edward H. Maurer for the plaintiff. There is no dispute as to the character of plaintiff's *Page 82 
injury. Butzman, according to Dr. Scott, who treated him, suffered a "comminuted fracture of the left tibia at the junction of the lower and middle third. That is the main bone of the left leg". Dr. Scott expressed the opinion that after July 29th, 1943, when he discharged him, plaintiff could do hard strenuous work of the character which he was engaged in before the accident.
Dr. Battalora, who did not examine Butzman until February 10th, 1944, eleven months after the accident, found that the posture of the left foot was normal, the left leg rotated at the ankle about five degrees and that the left leg was three-quarters of an inch shorter with ten percent less dorsiflexion of left foot than the right foot. He examined him again on June 3rd, 1944, and testified as follows:
"My opinion following this examination was the same as that expressed on February 10th, 1944, that this man has partial permanent disability of the left leg, rated at about 10%."
Dr. Maurer, who first saw the plaintiff on March 29th, 1944, about a year after the accident, and again three days before the trial, testified in answer to a question as to whether Butzman could perform the duties of a shipfitter, as follows:
"No definitely not. He has to climb ladders, go on scaffolds, and if he's off balance it would be a hazard to himself and his fellow workers. If he had a lifting occupation, where he had to stoop over and lift, which is the proper way to lift, he wouldn't be able to balance himself; he would be likely to have an accident and fall. Then again his muscles would tire and fatigue. There's some injury to the soft tissues."
[3, 4] We are of the opinion, as was the trial judge, that Butzman is unable to perform the work of a shipfitter in which occupation he was engaged at the time of the accident. The position of burner is one in which the laborer uses a torch of some kind to burn steel plates in conformity with some pattern and this work may be performed by the laborer while seated. As we have said, Butzman, so far as the evidence goes, was making more money after the accident than he was before, nevertheless, if he is totally disabled in contemplation of law from discharging the duties of the position he occupied when injured, the fact that he is earning more money in some other occupation is immaterial.
In the Stieffel case the injured employee was a stenographer who was occasionally required to do clerical work and to act as messenger. His right hip was injured in an accident. The Court of Appeal for the First Circuit held:
"Our conclusion is that the evidence shows that plaintiff is not incapacitated from doing any reasonable kind of work since his injury as he has and is now able to perform work similar to that which he was doing when injured. Most of the work of a stenographer is done with the mind, the hands, fingers, and body movements and postures. What little walking and manipulations of the lower limbs may be required in this kind of work, we believe plaintiff can do. If he were a carpenter, a mechanic, a logcutter, a painter, a ditch-digger, a farmer, a lineman, or if his means of earning a livelihood depended on any form of manual labor, we would have no hesitancy in reaching the conclusion that his disability affects his capacity to work and therefore his compensation should be controlled by subdivisions (a), (b) or (c), of said 8 (subdivisional)." (Permanent, total disability provisions).
The Supreme Court, however, in considering the case on a writ of review, found the Court of Appeal to be in error and, as we have heretofore stated, held that Stieffel was totally incapacitated.
[5] The learned District Judge suspended the payment of compensation due Butzman during the period for "which he has received or will continue to receive wages equal to or exceeding the amount of the compensation". Plaintiff claims that he is entitled to receive compensation from the date of his injury regardless of the wages paid him by his employer thereafter.
In the case of Carlino v. United States Fidelity Guaranty Company, on rehearing, 196 La. 400, 199 So. 228, 233, Chief Justice O'Niell, as the organ of the Court, said:
"Our opinion is that a suit brought by an injured employee for compensation for a period during which he is paid wages equal to or exceeding in amount the compensation claimed would be unavailing, not on the ground of its being premature, but because there would be no cause or right of action for compensation for that period. * * * Our opinion is that the plaintiff should not collect from the insurer any compensation for the period in which he was paid by the employer wages exceeding *Page 83 
in amount the compensation which he was entitled to receive; and our ruling is that the plaintiff shall not collect compensation for his disability as long as he continues to receive wages equal to or exceeding in amount the compensation which he is entitle to receive."
See, also, Holliday v. Martin Veneer Co., La., 20 So.2d 173, and Thornton v. E. I. du Pont de Nemours Co., La.,21 So.2d 46.
The plaintiff in this case was at the time of the trial still in the employ of the Delta Shipbuilding Company. In fact, ever since the accident, he has either received compensation at the maximum rate of $20 per week or has received a salary of about $70 a week. He is not entitled to any compensation as long as he is in the employ of the Delta Shipbuilding Company and receives as wages an amount equal to or in excess of $20 per week.
The judgment appealed from might be misinterpreted. As it reads, it would indicate that Butzman could not receive compensation as long as he works for the Delta Shipbuilding Company or anyone else and receives wages equal to or in excess of the compensation due him. This is not the case, compensation should be suspended only so long as he is employed by the Delta Shipbuilding Company. With this slight amendment the judgment appealed from is affirmed.
Affirmed.