This is a suit by which plaintiff seeks to recover the maximum compensation allowed by the compensation law from the defendant for total and permanent disability as the result of an explosion which occurred on December 26, 1944, in which plaintiff received "extensive multiple first, second and third degree sodium burns of entire body and face (eyes not affected)."
Plaintiff at the time of the accident was a foreman in defendant's sodium plant at Baton Rouge. There is no dispute as to the happening of the accident, the injury to the plaintiff and his wages. The only question at issue is the outcome of the said injuries.
The plaintiff alleges that he has been permanently injured and that his nerves and his nervous system have been permanently damaged, thus producing total and permanent disability for performing work of the character which he was performing when accidentally injured. Defendant, in its answer, alleges that plaintiff had fully recovered from the said injuries on May 2, 1945, and is able to perform the duties at which he was employed when burned.
The case was tried on January 25, February 14 and April 4, 1946, and was argued and submitted to the trial judge on June 5, 1946. On October 7, 1946, for written reasons assigned the trial court rendered a judgment rejecting plaintiff's demand and dismissing his suit on the ground that plaintiff had failed to prove that he was unable to satisfactorily perform the duties of a foreman in the sodium plant of defendant without additional injury to himself because of the injuries sustained by him in the accident, which allegedly caused him disability, being of the opinion that the plaintiff had resigned his position *Page 875 
with defendant not because he was unable to satisfactorily perform his duties, but for the reason that he was apprehensive that another explosion would occur, which, in his opinion, was not compensable within the meaning of the workmen's Compensation Law. On October 9, 1946, plaintiff filed a motion to re-open the note of evidence in order that certain tests might be made and additional evidence be introduced. In the alternative, he prayed for a rehearing. On October 21, 1946, the motion was granted. On February 14, 1947, a test was conducted on plaintiff. On April 30, 1947, evidence was introduced. On July 14, 1947, the case was resubmitted to the trial court. On January 13, 1948, the trial judge, with written reasons assigned, granted a judgment in favor of plaintiff, awarding him maximum compensation for a period beginning December 26, 1944, for a period of his disability, not exceeding 400 weeks, with legal interest on each past due instalment from its due date until paid, subject to a credit for the compensation due for the period from December 26, 1944, to July 13, 1945. From this judgment defendant has appealed.
Plaintiff entered the employment of defendant in the year 1937 as a pipe fitter helper. He worked himself up to a helper in the sodium department, finally becoming a foreman, the highest paid job, in the cell room of that department. He had worked in that department for more than five years prior to December 26, 1944, when on said date there was an explosion from which plaintiff received severe and painful burns.
The cell room in which plaintiff performed his duties as a shop foreman consisted of two barks or rows of cells, of approximately 38 cells to each row, cylinder in shape, about eighteen inches apart and about two feet high, and each of those cells operated at a temperature of 580 degrees Centigrade. Although the testimony regarding the temperature in the cell room is not quite clear and is somewhat in conflict, we believe that it can be safely stated that it was very hot in many places, particularly on top of and between the cells. Plaintiff's duties required him to walk on top of and around the cells.
Immediately after the explosion, plaintiff was given treatment at the plant hospital, then removed to Our Lady of the Lake Hospital, where he was placed under the care of Dr. Jeff McHugh. Dr. McHugh described plaintiff's condition as follows:
"When I first saw Mr. Sutcliffe he had a second degree burn in the right parietal region of his head. He had second degree burns just below the right shoulder on the anterior surface of the arm and about midway the right arm, anterior surface, and also second degree burns on the anterolateral surface of the right elbow, a second degree burn of the right flank, multiple small burns on the lateral surface of the right thigh and leg down to the ankle, and a second degree burn of a small surface on the lower medial surface of the left leg, and surrounding the second degree burn was an area of redness which we classify as a first degree burn."
As to the treatment given and the results thereof, Dr. McHugh testified:
"I gave him plasma intravenously, applied foille, and later switched to sulfathiazole ointment, and used various of the usual local applications until the burn was healed. The plasma was continued until the blood counts indicated that he was out of danger of dying from shock or blood concentration. Then, after the burns healed, the one at the right elbow had healed with a very deep cord-like scar which interfered with flexion and extension of the arm. This scar was dissected out and skin grafted from the left thigh onto the right elbow. Then he was returned to duty on May 2, 1945."
The medical testimony is conclusive that keloid formations were found and were forming at some of the scars, particularly at or around the elbow of the right arm at the time of the first trial of the case.
On plaintiff's return to the plant on May 2, 1945, he worked some eighteen days in the yard, supervising a labor gang, which work he was able to perform satisfactorily. On June 2, 1945, he was requested by his superior, on account of being short-handed, to return to his former position as foreman in the sodium department. He worked as *Page 876 
such for approximately thirty days, resigning on July 13, 1945.
Plaintiff testified that he felt that he was not performing his work as he should because he could not spend "that much time around the cells"; that his skin would not stand the heat which irritated it and his clothes rubbed his burns and the salt and chlorine in the air kept him irritated. During the time that he worked in June to July 13, 1945, plaintiff testified that a number of fine blisters made their appearance under the skin and that he missed several days' work, due, he guessed, from his nervous condition, "just fear of the heat. I just knew what I was going through when I went in it." He also testified that he was afraid of the working place itself, presumably of another explosion.
Dr. McHugh testified that on June 1, 1945, he rendered an opinion which he states that plaintiff "has some keloidal formation of his scars, which will probably not tolerate extremes of heat. I would suggest that he try his old job, applying vaseline before going into the heat. If the areas do not tolerate the heat, then he will have to work in a more normal temperature." Plaintiff testified that he followed Dr. McHugh's advice but that it had no apparent effect in relieving him.
The plaintiff further testified that between June 2, and July 13, 1945 he visited the first aid station several times for treatment and examinations or checks. He appears to be contradicted by the hospital record. The record shows that during that interval he only visited the first aid station two or three times for ailments not attributable to his burns. Furthermore, the hospital record shows that the plaintiff stated, on his termination examination on July 13, 1945, that he could not concentrate due to fear of fire and that it was better that he resigned. The hospital record seemed to have impressed the trial judge in his first reasons for judgment. However, by evidence taken on the reopening of the case, it is shown that the hospital record was not beyond criticism and was not altogether kept free from error. Plaintiff was emphatic that he had made several visits to the first aid station in regard to his scars.
Dr. James R. Godfrey, who testified for the plaintiff on the first hearing, was of the opinion that, due to the scars and the keloidal condition of the plaintiff extremes of temperature, whether hot or cold, would be more uncomfortable to plaintiff than to a person of normal skin. He was of the opinion that plaintiff could not perform the duties of a foreman in the sodium plant unless it meant work or go hungry.
Dr. R.T. Stephenson, who testified for the defendant on the first hearing, was of the opinion that plaintiff could perform his former duties as foreman in the sodium plant. He based that opinion on his opinion that persons with scar tissue can tolerate temperature extremes as easily as persons without and that keloidal formations are less sensitive to extremes of temperature than normal skin, However, he admits that "young keloids will probably be more sensitive to temperature than old ones; that having hardened with age will be less tender." On his examination of the plaintiff, he classified the keloidal formations on the right elbow and right forcarm as young, both of which were tender.
Dr. Jeff McHugh, who testified for the defendant on the first hearing, was likewise of the opinion that plaintiff could perform his former duties as foreman in the sodium plant. However, he disagreed with Dr. Stephenson that the keloidal formations are less sensitive to extremes of temperature than normal skin.
As stated supra, the trial judge, in his first reasons for judgment, disregarded plaintiff's testimony to the effect that he could not stand the heat and that the heat caused irritation of his burned areas and caused blisters under the skin and was of the opinion that plaintiff had resigned his position not because he was unable to perform his duties as foreman, but because he had become apprehensive that other explosions would occur (somewhat of a hysteria). The trial judge held that sue was not compensable.
The trial judge, in his second reasons for judgment states:
"Following the granting of plaintiff's motion to re-open this case, plaintiff at his own expense returned to Baton Rouge *Page 877 
from Colorado, where he is now living, in order to undergo actual tests to determine the effect of the heat on his skin. Although the evidence shows that since plaintiff left the employ of defendant, the temperature in the cell room where plaintiff was employed has been reduced by installation of additional ventilation equipment, still, according to the report of Dr. McHugh, who examined plaintiff on the morning of February 14, 1947, at 6:42 a.m. prior to his entry into the cell room and found him all right and again at 2:55 p.m. after he had remained in the cell room for the day, plaintiff complained that he had some itching of all the scars and there was 'a small blister over the external aspect of the right elbow just posterior to the lateral epicondyle.'
"On February 15th, 1947, the doctor again examined plaintiff and found, 'The blister on the elbow was receding. There were two blisters on the scar just posterior to the one found when he left off work. No ill effect was noted on any other scars.'
"Dr. McHugh's conclusions were: 'It is my opinion that Mr. Sutcliffe could resume his former work. If he were doing same it would be advisable to apply a heavy vaseline on the scars each day. It is possible that he does have itching when subjected to extremes of temperature and I would classify that as an annoyance but not as disabling him from his former work.' "
"When Dr. McHugh was testifying the Court directed the following question to him:
" 'Were the tests that you made sufficient, in your opinion, to ascertain the effect on this man's health in working in the cell room up there?'
"His answer was:
" 'Well, I would say that it would probably be necessary to observe him over a period of a month or six weeks to be certain of that, but my opinion would be that there would be no ill effects on his health, that the only result of working in there might be some itching, and there might be some little blistering on the small area on which he has a keloid scar. Otherwise, I do not think there would be any ill effect on his health.'
"The doctor further testified that he was of the opinion that the annoyance from the itching and blistering might disappear within a period of two weeks to a month. He based this opinion on past experience with the same condition.
"Though this Court has utmost confidence in Dr. McHugh's opinion, the test, in my opinion, serves to corroborate the testimony of plaintiff that he could no longer perform the duties for which he was employed without ill effect on himself. From my appreciation of the interpretation of the Workmen's Compensation Law, an employee is disabled within the meaning of that law if the performance of such duties produces pain and discomfort. I now am of the opinion that such is the case with Mr. Sutcliffe — that is — that he is unable to perform his duties as foreman in the sodium plant without itching and blistering."
[1, 2] A careful reading of all the testimony and particularly that part introduced on the re-opening of the note of evidence conclusively leads us to the opinion that the trial judge did not commit a manifest error in the evaluation of the testimony nor in the facts of the case and the law applicable thereto.
There is no question of plaintiff being a malingerer or in any way attempting to exaggerate his condition. He was earning at the time of his injury a monthly salary of over $360.00 per month. It is unreasonable to believe that he would deliberately forego that salary for a mere $20.00 per week unless he had good and valid reasons. These reasons were fully explained by the test conducted after the re-opening of the case.
In the alternative, the defendant contends that the plaintiff should not be awarded compensation for more than one hundred weeks for the impairment of a physical function as provided for Sec. 8, Paragraph (3), should be Subdivision 1(d) 16 of the Compensation Act, Act No. 242 of 1928, p. 358. Without any extended discussion, we find this contention without merit. There was no impairment of a physical function. There is no question that he had the full use of all the members of his body. Furthermore, *Page 878 
the disability complained of does not fall under Subdivision 1(d), Paragraph 16, but is governed by subdivision 1(b).
For these reasons assigned, the judgment appealed from is affirmed.