The os calcis of plaintiff's left heel was fractured when he was forced to jump or fell several feet to the ground from an oil derrick to avoid being hit by swinging swivel. The accident occurred on July 19, 1946. He was then engaged in the performance of a contract of hiring with Eber W. Martin and Son. He was promptly carried to Dr. L. P. Coleman, in the Town of Ferriday, Louisiana, who diagnosed the injury and administered appropriate treatment. He continued under the doctor's observation and returned periodically for examination for some fifteen months. The final check-up was on February 2, 1948. He was paid compensation at the rate of Twenty ($20.00) Dollars per week for 52 weeks. Further payments being refused by defendant's insurer, Maryland Casualty Company, this suit to recover compensation on the theory and basis of permanent total disability, at the rate of $20.00 per week, less payments made, was instituted against said insurer.
The sole issue raised by the pleadings is whether plaintiff's foot has recovered sufficiently to enable him to perform manual labor of the kind or similar thereto, he was performing when hurt.
The Court ruled that plaintiff suffers from an impairment of the usefulness of the physical functioning of the left foot, but not total and permanent disability to do the work of a common laborer. In keeping with this conclusion, compensation for one hundred weeks at $20.00 per week, less payments made, was awarded. Paragraph (d) 16, subsection 1, of Section 8 of the Workmen's Compensation Law, Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 358, was applied as the controlling law of the case.
Plaintiff appealed and here insists that the court erred in not giving judgment for compensation for the full period for which he sued. Defendant has not answered the appeal but virtually acquiesces in the correctness of the amount of the award, but does not unequivocally concede the correctness of the basis upon which it is predicated.
Plaintiff's duties required that he render assistance to the operator of the particular truck to which he was attached. This class of labor is commonly referred to as "swamper". It was his duty to carry the end of a steel cable, affixed to a winch on the truck, from place to place, when it was necessary to do so. The cable, inter alia, would be attached to objects that were dragged to and placed upon the truck. To successfully perform these duties he had to be alert, active and strong.
As said by the trial judge, the duties of a "swamper" do not characterize him as being engaged in a "trade or occupation requiring special skill or training * * * but it is simply one of the classifications of the many different duties of a common laborer engaged in the job of trucking or hauling machinery". In keeping with this finding, the Court properly held inapplicable to the facts of the case that line of decisions of the courts of this *Page 104 
state which hold that where an employee sustains injury that renders him incapable of performing the duties of his employment, one that requires special skill, training and/or experience, compensation is due. To support this ruling the case of Mitchell v. T. J. Moss Tie Company et al., La. App.,27 So.2d 385, is cited. Judge Hardy in that case cited and discussed the most recent cases pertinent to the question under consideration, and clearly stated the difference between the status of skilled and unskilled workmen, with respect to the right to demand compensation for a disabling injury.
The record is not clear as to the date the plaintiff was discharged by Dr. Coleman as being able to perform manual labor. The doctor's testimony leads us to think that it was his opinion this condition was attained at the end of fifteen months from the date of the accident. Dr. Coleman was the only physician who examined and treated plaintiff and who gave testimony in the case. He says that the fracture was reduced and cast applied; that almost a perfect result was achieved but there developed a very small calloused area on the foot but not on the weight-bearing surface thereof, which was due to pressure from the cast. This calloused area, however, did not to any extent militate against complete union of the fractured portions of the heel. The doctor says the foot has full range of motion and that no pain should be felt by plaintiff unless it be from irritation of the small calloused area. This area, he says, works about like a corn. He estimated that disability of the foot at from five per cent to fifteen per cent. This estimate was based upon the examination of February 2nd.
Dr. Coleman's opinion as to the duration of the disability of the foot was not sought by interrogation and it was not volunteered. He said that plaintiff's physical condition was such that he could perform almost any sort of manual labor.
Plaintiff testified that his foot swells when he walks "too much"; that it is weak and he limps on the left leg and for this reason he cannot now do the work of a "swamper". He did not testify, however, that he could not perform any other of the many sorts of work that fall to common laborers. Two laborers testified that they did not think plaintiff's physical condition was such as to enable him to do the work of a "swamper". Neither did they say that he could not do other kinds of laborious work.
It is shown that plaintiff experienced no difficulty in walking up a long flight of steps to the court room. It is also shown that he freely walked about and over his home premises for hours without apparent difficulty or unusual effort. These facts were proven by the testimony of defendant's agents who observed his movements on four different days, and who made films that reflected his movements on said occasions.
The admissibility of the films and their projection in court, after being identified by the persons who participated in making them, was challenged by the attorney for plaintiff. The objection was properly overruled. We know of no more efficient method of proving the movements of a reputed injured litigant at a given time and place than by photographs of such movements. This court has heretofore given weight and credit to such evidence and allowed projection of the films before it when the record disclosed that such projections were had in the court below. Appellant's industrious counsel has cited no law, statutory or otherwise, that supports his position on this question.
Appellant cites and relies upon: Stieffel v. Valentine Sugars, Inc., et al., 189 La. 1091, 179 So. 6; Yarbough v. Great American Indemnity Company, La. App., 159 So. 438; Butzman v. Delta Shipbuilding Company, Inc., La. App., et al.,21 So.2d 80; Sutcliffe v. E. I. Dupont de Nemours and Company, La. App., 36 So.2d 874, as being contrary to the lower court's judgment as respects the rule applicable to injured unskilled and/or common laborers. We have closely read and considered each of the cited cases and do not find that either is contrary to what this court held in the Mitchell case, supra.
We are quite certain that when the case was tried and for some time prior, plaintiff was not totally disabled to perform *Page 105 
many kinds of manual labor; and we are equally certain the disability that then beset him is not permanent. To so hold we would have to indulge in speculation and presumption not authorized by the record nor supported by every-day human experience and observation.
Whether the award be based upon disability of fifteen per cent for 300 weeks or upon the provision of the Workmen's Compensation Law, applied by the lower court in dollars and cents, makes no great difference. The lower court's award is really more favorable to the plaintiff.
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.