Plaintiff is a master carpenter by trade. On March 26, 1946, while working on a building being erected by the defendant, Beavers-Porter Construction Company, a partnership composed of R. W. Porter, resident of the State of Texas, and H. F. Beavers, resident of Shreveport, Louisiana, he fell from a scaffold to the ground and suffered comminuted fracture of the lower third of the right tibia, immediately above the ankle. He was promptly removed to a sanitarium in the City of Shreveport, where he was treated by Dr. C. E. Boyd. The fracture was reduced and appropriate cast applied while the leg was in traction. There was no injury to the ankle joint.
Dr. Boyd's treatment and regular observation of plaintiff continued until January 13, 1947. The cast was permanently removed after it had been worn one hundred forty-one (141) days. The ankle joint, and to some extent, the knee, became stiff from disuse and immobilization. He was then, beyond dispute, wholly disabled to perform any sort of work.
The employer's alleged insurer, American Automobile Insurance Company of St. Louis, Missouri, recognized plaintiff's disability and paid to him compensation at the rate of Twenty ($20.00) Dollars per week for forty-two (42) consecutive weeks. Discontinuance of payments thereafter brought forth this suit.
Plaintiff sued to recover compensation on the basis of permanent total disability or for four hundred (400) weeks, less amounts previously paid him, and for medical expenses in the sum of Five Hundred ($500.00) Dollars. The employer partnership was dissolved prior to the filing of the suit. H. F. Beavers and the insurance *Page 571 
company were cited as defendants. Citation upon Porter was also prayed, but as he was then a non-resident, no service was had upon him except through a curator ad hoc. Exception to the jurisdiction ratione personae by the curator ad hoc was sustained and the suit, as to Porter, dismissed. Judgment in solido against the three named defendants is prayed for.
The insurance company, in limine litis, filed an exception of no right of action, which has for its predicate the alleged fact that on March 23, 1946, three days prior to the accident, at the request of R. W. Porter, the compensation insurance was cancelled. This exception, it appears, was not tried; and, reserving its rights thereunder, the insurance company answered. It is admitted by this defendant that during the existence of the partnership of Beavers-Porter Construction Company it did "extend" to said partnership workmen's compensation insurance for a period beginning February 27, 1946, to March 23, 1946, on which latter date, it is alleged, same terminated; that said insurance was arranged for by Porter through its agent in Longview, Texas; that he, on March 23, 1946, informed said agency that the partnership had been dissolved and requested the termination of the insurance, which, it is averred, was done on that date.
The alleged insurer admits that for a period of forty-two (42) weeks, through error and inadvertence, it paid to plaintiff compensation in the sum of $840.00, and also all hospital and medical expenses incurred. Judgment against him therefor, in reconvention is prayed.
Although no attempt was made to implead the partnership, nor was judgment against it prayed, it eo nomine joined Beavers in his answer, which puts at issue plaintiff's alleged disability. It is affirmatively alleged by them that at the time of and prior to the accident the partnership was protected against claims for workmen's compensation by a policy of insurance issued by the named insurer; and they pray specifically that should it be held that plaintiff is entitled to recover for any amount, said insurer be also condemned therefor.
Trial of the case began June 27, 1947, and, after adduction of the major part of the testimony, it was continued by consent for the taking of additional testimony. This having eventually been done, the case, on November 2, 1948, was argued and submitted. Thereafter, judgment was rendered against Beavers and the insurance Company in solido for compensation as by plaintiff prayed, and for medical expenses in the sum of Five Hundred ($500.00) Dollars, less credit for amounts paid on that account.
Prior to signing of judgment, the insurance company filed motion for a rehearing, which, before being ruled on, was followed by a motion to reopen, which was sustained. The gravamen of this motion is that in view of the lapse of time since the trial began, and the possibility of plaintiff's disability to work, if it then existed, having ceased, he should be required to submit to further physical examination by physicians to the end that his then condition could be determined. This course was followed, and on March 3, 1949, further testimony was adduced. The case was again submitted for decision, followed by reinstatement of the judgment first rendered. The insurance company appealed.
The appeal tenders for consideration and decision these questions:
1. Had plaintiff, at time the case was finally submitted for decision, recovered from the admitted injury and disability sufficiently to do work of any reasonable character?
2. If this question is answered in the negative it will then be necessary to decide: Was the compensation insurance coverage, alleged upon, in force and effect at the time of the accident?
We believe the record proves that the disability of which plaintiff complains should be primarily ascribed to the wearing of the cast for so long and enforced disuse of the leg, and not to the original injury. It is not shown why the cast should have been worn for 141 days. It *Page 572 
is shown that the fracture healed satisfactorily, the apposition and union being correct.
Appellant charges that to plaintiff's failure to exercise the right leg, especially the ankle, after the cast was removed, any disability that now afflicts him should be accredited. Dr. Boyd's opinion positively supports this position. He is of the belief that had plaintiff followed his directions, normal functioning of the leg and ankle would long ago have been attained.
Dr. Boyd examined plaintiff some three weeks prior to first trial, at the request of the insurer. Plaintiff then complained of soreness of the ankle. Dr. Boyd found some limitation in both extension and flexion of the ankle joint. He thought that it would require three more months of use "to limber up the ankle to where the stiffness would disappear".
On January 15, 1947, Dr. T. M. Oxford, orthopedic surgeon, examined plaintiff. He then complained of the ankle being weak, stiff and painful. Dr. Oxford made careful physical examination of both of plaintiff's lower extremities, and found no great difference in their measurements. The ankle joints measured the same in circumference. He found that "active and passive eversion and inversion of the right ankle was restricted about fifty per cent (50%), and slight swelling of the middorsal region of the right foot. He also found splendid clinical conditions at the locus of the fracture. It was then Dr. Oxford's opinion that plaintiff should be able to resume work in from four to six weeks. He again examined plaintiff on June 3, 1947. He was asked:
"Q. Did you notice any improvement in his condition as of that date?"
He replied:
"A. Well, not much."
He attributed the lack of improvement to the failure to use and properly exercise the leg and foot. He thought a return to light work would hasten complete recovery, but added that he could not be expected to do work that required climbing or that would be heavy in character. Concluding his direct examination, Dr. Oxford stated that the termination of this law suit, he thought, "would be of appreciable benefit in hastening his full recovery to do most anything he wanted to do." He also stated that usually a trauma of this character produced disability to work for from eight to twelve months.
Plaintiff was examined by Dr. Tom J. Smith on June 26, 1947. From this examination and what it revealed, Dr. Smith was of the opinion that plaintiff would be disabled for not more than six more months. He recommended that he do light work to aid nature in its effort to give full relief to the disabled member. He added that sometimes the soreness in a joint, due to the proximity of a fracture, lasts a long time, "and requires a lot of exercise and physiotherapy to work it out". He also stated that the length of time the cast was in place has material bearing upon the time required to recover, and qualified this by saying that in the present case, adequate time had elapsed since the cast was removed, for full recovery, but that there was no fixed rule for all cases.
Dr. Smith was the only physician who testified at the trial that followed re-opening of the case. He again examined plaintiff on December 9, 1947, and January 14, 1949. At the first of these examinations plaintiff complained of aching in the right ankle, drawing sensation in the calf of right leg and in the Achilles tendon, shooting pains at times in the ankle, especially in damp weather, and that there was a slight swelling of the ankle after having done some walking; that he could not squat down on the ankle without pain.
Dr. Smith's report to the insurance company, after the examination on December 7, 1947, was as follows:
"Mr. Willet is now working for the Louisiana Forestry Department, and there seems to be considerable improvement in his condition since the last report was made on June 28, 1947. At that time he was given four to six months further disability. I believe he is able to do carpentering work at this time, though he might have some difficulty in climbing." *Page 573 
When examined by Dr. Smith on January 14, 1949, plaintiff's assertions of pain and disability were practically the same as when examined previously. In his report, following this examination, inter alia, he said:
"My opinion at that time was:
'Due to the fact that Mr. Willet's right leg was in a cast for an unusually long time, there is a little stiffness in his right ankle as a result of soft tissue changes rather than bony changes. For the ordinary type of work, there seems to be no permanent partial disability, but for climbing, squatting or walking on scaffolds there is possibly a small amount of permanent partial disability in this right ankle to the amount of ten or fifteen per cent.' "
He testified that there had been very little, if any, improvement in plaintiff's condition between the two last examinations, and added that he did not believe there would be any appreciable change in the ankle from now on, that it had become static.
On cross-examination, Dr. Smith admitted that the condition of stiffness he found in plaintiff's ankle would handicap him materially in carrying heavy loads, squatting, climbing ladders and roofs; that he could not get about as actively as he did prior to the injury and the disability would identify him among workmen not so afflicted. He did not doubt that after standing or working for some length of time the ankle would become painful.
Dr. R. Denman Crow examined plaintiff on June 26, 1947, the day before the first trial, in conjunction with Dr. Smith. Dr. Crow's findings and conclusions were not greatly different from those of Dr. Smith.
All of the doctors who were interrogated concerning the possible duration of plaintiff's disability are certain it is not permanent in character. Plaintiff, his wife, and some neighbors testified concerning his alleged disability due to the ankle's condition. Plaintiff is certain that after standing or walking for a time the ankle swells and the pain is accelerated to the extent that he cannot, except in great discomfort, and then on the ground, perform the work required of a master carpenter. His wife supports him in this respect. He testified that he accepted opportunities to do carpentry with several different persons and did do some work for them, but due to labor union regulations and/or the ankle's condition, in each instance, he had to cease his efforts. The men for whom he worked testified in corroboration of what he says in this regard. In neither instance did he attempt to leave the ground. One or more of these employees testified that work was offered plaintiff, more out of sympathy than business considerations. Of course, it goes without saying that a carpenter who is unable to climb will generally find himself without employment. Contractors want, and demand, workmen who are physically able to perform work wherever directed.
Careful consideration of all the evidence in the case has led us to the conclusion that plaintiff's ankle has not recovered from the ill effects of long immobilization and non-use while the cast was in place. It may be true that plaintiff has not to the fullest extent followed approved methods for restoration of the ankle's normal functioning, but it does not imperatively follow that had he done so the present disability would not exist. Not a single physician at time of their respective examinations, would say that plaintiff had fully recovered from the effects of his injury.
Plaintiff is nearly sixty years old and has been married thirty-five years. His honesty and good faith have not been materially affected by the testimony. At the time injured, he was earning about $270.00 per month. It would be strange, indeed, for one of his former status and earning ability to wilfully forego such wages to accept less than one-third of that amount.
However, we do not really believe the disability permanent. Plaintiff admits that at times, under discomforting conditions, he earned good wages as a ground carpenter. At the time of second trial he was earning $100.00 per month as employee of the Louisiana Forestry Commission and had been paid that salary since June 15, 1948; that for the year 1948 the Commission *Page 574 
paid him over $800.00 for his services to it.
Correct decision of this case, as was true in the case of Boling v. Bituminous Casualty Corporation, La. App.,42 So.2d 567, hinges upon an interpretation of the phrase "disability to do work of any reasonable character", which appears in the Employer's Liability Act, Act No. 20 of 1914. This phrase has many times been considered by the Supreme Court, the last being in Ranatza v. Higgins Industries, Inc., 208 La. 198,23 So.2d 45, 46. Therein the Court, through the Chief Justice, said:
"This Court has held in two cases, namely, Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, and Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6, that when an employee is a skilled mechanic, or is trained and experienced in a special trade, and when the injury causes a total disability to continue carrying on the trade or the work for which alone the employee is suited by training and experience, and causes total disability to do work of a similar character, the disability must be considered as total disability to do work of any reasonable character, in the meaning of paragraph (a), (b) and (c) of subsection 1 of section 8 of the Employers' Liability Act, Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357, notwithstanding the injured employee may have succeeded in obtaining, after the accident, employment of a different kind and not requiring any special skill or training. * * *"
The Court cites an array of decisions by the Courts of Appeal of this State that are in accord with this interpretation. The Court, anent this question, further said:
"The rule is particularly applicable to this case, where the employment obtained since the accident requires no special training or skill, such as that which makes a carpenter or a member of any of the other mechanical trades somewhat independent in the matter of obtaining employment at desirable wages."
Later cases of the Courts of Appeal, dealing with this question, are: Butzman v. Delta Shipbuilding Company, Inc., et al., La. App., 21 So.2d 80; Brown v. Continental Oil Company, La. App., 22 So.2d 758; De Kerlegand v. Car General Insurance Corp., Ltd., La. App., 30 So.2d 881.
Our discussion of this question in the Boling case could appropriately be adopted here.
The record leaves no doubt as regards the existence of compensation insurance coverage when the accident occurred, although it appears that no policy contract actually issued.
Soon after the articles of partnership were signed by Beavers and Porter, the latter, who had previously procured such insurance from the named insurer to cover his personal operations in the State of Texas, orally applied to the insurer's agent in Longview, Texas, for like protection for the new partnership. The matter went through the usual routine, the application was approved and the premium charged to the partnership. No part of it was paid, however, until after the accident.
It appears fairly clear that Beavers and Porter talked partnership dissolution on March 23rd, three days prior to the accident, and the conditions of the dissolution were then tentatively agreed to, but the instrument evidencing the dissolution was not signed by the partners until April 11th, some sixteen days after the accident. At that time Beavers paid to Porter an amount in cash as part of the terms of dissolution. It is clear from these facts that the dissolution was in suspense, inchoate, until this money was paid and the dissolution agreement signed. There are other established facts and documents in the record that go far to negative the contention that the partnership dissolution dated from March 23, 1946.
Be all this as it may, as we view the facts, the date the dissolution became effective is not of controlling influence. Even if Porter did on March 23, 1946, telephone the agency to cancel the insurance contract, no cancellation was made of the insurance until April 1st, thereafter. If the insurer preferred not to make the cancellation until April 1st, that was a matter that peculiarly concerned it. It so *Page 575 
happens that Porter, with full knowledge of the fact, paid the amount of premium to April 1st. So long as the insurance was not cancelled, it protected the partnership and its individual members.
It is contended by the insurer that as no policy contract actually issued, the terms of the insurance agreement are not susceptible of proof, and that, perforce, plaintiff failed to prove the primary question in the case, that of coverage. This position is untenable. If there exists written evidence of the insurance, the document must be produced, if demanded. We have been cited to no law requiring that contracts of insurance of any character be in writing. All concerned knew the character of insurance applied for. The premium charge was based upon the rules governing in Workmen's Compensation insurance. The insurer's records reveal, without doubt, that its liability to the partnership was that of compensation insurer, and finally, in keeping with its understanding of its relationship to the partnership, it freely paid to plaintiff forty-two months compensation. These payments, it might be contended, under Section 18, subsections 1(C), 5 of the Workmen's Compensation Law, as amended, Act No. 85 of 1926, pp. 121, 123, do not commit the insurer to unconditional liability, but surely by making such payments the insurer believed it was contractually bound to do so. It had no doubt that compensation insurance was in effect.
Attorneys for Beavers oppose the insurer's position as regards coverage and cite the following cases to support their position, viz: Dawson v. Metropolitan Life Insurance Company, La. App., 9 So.2d 252; Long v. Home Indemnity Company of New York et al., La. App., 169 So. 154; Bradley v. Nashville Insurance Company, 3 La. Ann. 708, 48 Am.Dec. 465; 32 Corpus Juris, p. 1059, § 135.
The lower Court gave plaintiff judgment for "Two Hundred ($200.00) Dollars for additional medical costs". The record does not disclose that plaintiff has paid any amount for doctors', hospital or medical expenses. Until he has done so, he has no right of recovery on these accounts. Presumably, the insurer has paid all incurred expenses of this character. It so alleged.
For the reasons herein given, the judgment from which appeal is amended by reducing the period of compensation to the duration of temporary disability, not exceeding, however, three hundred (300) weeks, less forty-two (42) payments heretofore made, and by deleting therefrom entirely the award of Two Hundred ($200.00) Dollars above discussed. And, as thus amended, said judgment is affirmed. Plaintiff is cast for costs of appeal.