Plaintiff was seriously injured when an oil derrick which he and others were dismantling, collapsed. He fell some sixteen (16') feet onto a barge and then toppled into the waters of Caddo Lake. His left leg was broken near the ankle joint. Both bones of the right leg were broken just *Page 568 
above the ankle, and both knees were seriously hurt. He was hospitalized for two weeks.
At the time of the accident, plaintiff was in the employment of the partnership of Guess and Holliman, whose workmen's compensation insurance was carried by Bituminous Casualty Corporation.
The employer and its insurer recognized the condition of total disability that afflicted plaintiff and he was paid compensation at the rate of Twenty ($20.00) Dollars per week until March 24, 1949, a period of over one hundred (100) weeks. Payments were discontinued on the ground that employer and insurer believed plaintiff had recovered his former fine physical condition sufficiently to gain a respectable livelihood by pursuing work other than that of rig builder, his trade when hurt. This suit was immediately instituted against the insurer to recover additional compensation at the maximum rate for four hundred (400) weeks, less payments made, and for physicians' and medical expenses incurred.
Plaintiff alleged that he is no longer able to perform work of "any reasonable character" in that he is now wholly unable physically to erect and dismantle rigs for oil wells. He admits in his petition that from July to November, 1948, he earned approximately Forty ($40.00) Dollars per week as a carpenter's apprentice, and that for several months, prior to filing suit, he had worked for a steel plant as maintenance switcher, his wages being Fifty-Two ($52.00) Dollars per week. He further alleges in Article 15 of his petition:
"Petitioner has no occupation except that of a rig-builder as described, and any other work he can engage in is, of necessity, on the ground and at a rate of pay which in no event could exceed $52.00 per week."
Defendant, in answer, replied:
"The allegations of paragraph 15 are denied, and in this connection your defendant shows that plaintiff, by reason of his training and previous experience, is qualified to engage in other gainful employments as illustrated by the allegations of paragraph 14 of plaintiff's petition, and that plaintiff's previous training and experience has qualified him for such employment and that, by reason of such employment, he is capable of earning a reasonable and gainful livelihood."
There was judgment for plaintiff for compensation as by him prayed. Defendant prosecutes appeal.
This case re-tenders a question that has been before the courts of this state many times. If it were of first impression, we lean strongly to the belief that our opinion would be otherwise than we now feel constrained to render.
Plaintiff was a strong, active, young man of the age of twenty-two (22) when injured. He served four years in the Marine Corps as flier during World War II. After this service he attended college two years, and in October, 1946, took up rig building as a trade or vocation. When injured he was being paid Twenty-Two ($22.00) Dollars per day for his services.
The record leaves no doubt, in fact, it is not seriously questioned, that at the present time, and possibly for the balance of his life, plaintiff is wholly disabled to follow the trade of rig building. His injuries, while largely, but not entirely healed, have rendered him incapable of safely climbing upon rigs and handling, above the ground, the parts and equipment necessary to the erection thereof. The record is almost as certain that plaintiff is presently able and will have little difficulty in the future to earn wages in line with those he admits earning since the accident. The limited impairments that now beset his knees and legs will doubtless ultimately pass away. But the fact remains that even though, after this occurs, he should be willing to again engage in rig building, because of the loss of agility the power of physical alertness and weight bearing strength, employment of that kind would be denied him. His own physical limitations would not only be a menace to his own safety, but, in a measure, to that of those who would be associated with him in the work.
This case turns upon an interpretation of the term "disability to do work *Page 569 
of any reasonable character", employed in the Workmen's Compensation Law. Act No. 242 of 1928, p. 357, § 8, subd. 1(a). The Supreme Court has so construed this language that there now remains no uncertainty as to its meaning. This is clearly reflected in the opinion of the Supreme Court in Ranatza v. Higgins Industries, Inc., 208 La. 198, 23 So.2d 45, 46, wherein it is said:
"This court has held in two cases, namely, Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, and Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6, that when an employee is a skilled mechanic, or is trained and experienced in a special trade and when the injury causes a total disability to continue carrying on the trade or the work for which alone the employee is suited by training and experience, and causes total disability to do any work of a similar character, the disability must be considered as total disability to do work of any reasonable character, in the meaning of paragraphs (a), (b) and (c) of subsection 1 of section 8 of the Employers' Liability Act, Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357, notwithstanding the injured employee may have succeeded in obtaining, after the accident, employment of a different kind and not requiring any special skill or training. The same rule has been followed consistently by the courts of appeal, specifically, in the following cases: McQueen v. Union Indemnity Co., 18 La. App. 612, 136 So. 761; Yarbrough v. Great American Indemnity Co., La. App., 159 So. 438; Custer v. New Orleans Paper Box Factory, La. App., 170 So. 388; Hibbard v. Blane, La. App., 183 So. 39; Anderson v. May, La. App., 195 So. 783; Sumrall v. E. I. Du Pont De Nemours Co., La. App., 1 So.2d 430; Phillips v. Wohlfeld, La. App., 10 So.2d 258; Thompson v. Leach McClain [La. App.], 11 So.2d 109; McKenzie v. Standard Motor [Car] Co., La. App., 15 So.2d 115. The rule is particularly applicable to this case, where the employment obtained since the accident requires no special training or skill, such as that which makes a carpenter or a member of any of the other mechanical trades somewhat independent in the matter of obtaining employment at desirable wages."
This decision, buttressed by the array of cited cases, definitely puts at rest, it seems to us, this very important and much embattled question. The language of the Court clearly fits the facts of the present case in that plaintiff here, skilled by training and practical experience as a rig builder, is not only totally disabled to follow that trade, but is equally disabled to engage in a similar trade, vocation or business. It will be noted that the situation is not altered "notwithstanding the injured employee may have succeeded in obtaining, after the accident, employment of a different kind and not requiring any special skill or training." The Courts of Appeal of this State, of course, have consistently followed this interpretation of the Workmen's Compensation Law. The following are among the latest cases in point: Butzman v. Delta Shipbuilding Company, Inc., et al., La. App., 21 So.2d 80; Brown v. Continental Oil Company, La. App., 22 So.2d 758; De Kerlegand v. Car General Insurance Corp., Ltd., La. App.,30 So.2d 881.
Appellant relies upon Heard v. Receivers of Parker Gravel Company, La. App., 194 So. 143. It is not apropos here. It was simply held in that case that inasmuch as the loss of fingers did not disable the plaintiff to conduct farming, a business in which he had had much experience, but did disable him from performing the manual labor he was performing when hurt, he should be compensated under the specific injury provision of the Workmen's Compensation Law and not under the total disability clauses.
The judgment, for the reasons herein given, is affirmed with costs. *Page 570